UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ABOU MAMADOU LY,

Petitioner, Case No. 1:26-cv-2317

v. Hon. Hala Y. Jarbou

KEVIN RAYCRAFT et al.,

Respondents.
______________________________/

**OPINION**

Petitioner, a United States Immigration and Customs Enforcement (ICE) detainee currently detained at the North Lake Processing Center located in Baldwin, Lake County, Michigan, initiated this action by filing a counseled petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241. (Pet., ECF No. 1.) For the following reasons, the Court will deny Petitioner's petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241 without prejudice.

**Discussion**

**I. Procedural History**

In Petitioner's § 2241 petition, Petitioner challenges the lawfulness of his current detention and asks the Court to, *inter alia*, accept jurisdiction over this action and issue a writ of habeas corpus pursuant to 28 U.S.C. § 2241 ordering Respondents to release Petitioner. (Pet., ECF No. 1, PageID.26.)

In an order entered on August 17, 2026, the Court directed Respondents to show cause, within three business days, why the writ of habeas corpus and other relief requested by Petitioner should not be granted. (Order, ECF No. 3.) Respondents filed their response on August 24, 2026, (ECF No. 6), and Petitioner filed his reply on August 27, 2026, (ECF No. 7).

## II. Relevant Factual Background

"Petitioner is a native and citizen of Senegal." (Parker Decl. ¶ 4, ECF No. 6-1, PageID.64.) Petitioner entered the United States without inspection in November 2023, and shortly thereafter, Department of Homeland Security (DHS) agents encountered Petitioner. (Parker Decl. ¶ 6, ECF No. 6-1, PageID.65.) At that time, DHS issued Petitioner a Form I-862, Notice to Appear, charging Petitioner with inadmissibility under § 212(a)(6)(A)(i) of the Immigration and Nationality Act (INA). (*Id.* ¶ 6.) DHS then released Petitioner into the United States. (*Id.* ¶ 7.) On February 15, 2024, Petitioner filed an application for asylum. (*Id.* ¶ 8.)

On December 17, 2025, DHS took Petitioner into custody during a check-in appointment. (*Id.* ¶ 9.) On February 12, 2026, the Detroit Immigration Court "pretermitted [Petitioner's] asylum application and ordered [Petitioner] removed to Uganda, pursuant to an Asylum Cooperative Agreement (ACA) with [Uganda.]" (*Id.* ¶ 12, PageID.66.) Petitioner did not file an appeal of the decision and the removal became final on March 17, 2026. (*Id.*)

On May 12, 2026, Detroit Enforcement and Removal Operations (ERO) nominated Petitioner through the ICE ERO Headquarters to be manifested for the next ACA removal flight to Uganda. (*Id.* ¶ 14, PageID.66.) Detroit ERO completed an I-269 Certificate of Identity to be Petitioner's authorized travel document to be removed to Uganda. (*Id.*) On May 26, 2026, ICE ERO served Petitioner with notice for a 90-day Post Order Custody Review, which was completed on June 4, 2026. (*Id.* ¶ 15, PageID.67.)

On June 5, 2026, ICE ERO contacted ICE Headquarters to request the status of the request to schedule a removal flight for Petitioner to Uganda. (*Id.* ¶ 16.) ICE Headquarters advised that because of the Ebola outbreak in Uganda, "ICE ACA charter flights were not authorized to fly into Uganda and [were] halted until the Ebola outbreak was gone." (*Id.*)

On June 30, 2026, Detroit ERO contacted ICE Headquarters to inquire whether ACA removal flights to Uganda had been resumed. (*Id.* ¶ 18.) ICE Headquarters "advised that there are no changes since the last update, and that travel was still halted until further notice due to the Ebola outbreak." (*Id.*) The declarant states that ICE Headquarters will "continue to monitor and reach out to Detroit ERO once flights resume." (*Id.*)

## III. Habeas Corpus Legal Standard

The Constitution guarantees that the writ of habeas corpus is "available to every individual detained within the United States." *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004) (citing U.S. Const., Art I, § 9, cl. 2). Section 2241 of Title 28 confers the federal courts with the power to issue writs of habeas corpus to persons "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241. This includes challenges by non-citizens in immigration-related matters. *See Zadvydas v. Davis*, 533 U.S. 678, 687 (2001); *see also A. A. R. P. v. Trump*, 145 S. Ct. 1364, 1367 (2025).

## IV. Merits Discussion

The parties agree that because Petitioner has a final order of removal, Petitioner's present detention is governed by 8 U.S.C. § 1231. (*See* Resp., ECF No. 6, PageID.56; Pet., ECF No. 1, PageID.26.) However, Petitioner contends that his detention is unlawful and violates the Due Process Clause of the Fifth Amendment. (Pet., ECF No. 1, PageID.8–11.) In response, Respondents argue that Petitioner's continued detention under 8 U.S.C. § 1231(a) remains lawful and does not implicate the constitutional concerns identified in *Zadvydas v. Davis*, 533 U.S. 678, 701 (2001). (*See* Resp., ECF No. 6, PageID.58–59.)

Section 1231 provides that "when an alien is ordered removed, the Attorney General shall remove the alien from the United States within a period of 90 days (in this section referred to as the 'removal period')." 8 U.S.C. § 1231(a)(1)(A). "During the removal period, the Attorney

General shall detain the alien." *Id.* § 1231(a)(2)(A). Here, as noted above, Petitioner's order of removal became final on March 17, 2026, and the 90-day removal period following the order expired before Petitioner filed the present action. *See id.* § 1231(a)(1) ("The [90-day] removal period begins on . . . [t]he date the order of removal becomes administratively final.").

In *Zadvydas v. Davis*, the Supreme Court held that after expiration of the 90-day removal period, the Government may continue to detain the noncitizen for a "presumptively reasonable period" of time, which the Supreme Court concluded equaled six months. *See Zadvydas*, 533 U.S. at 701. Following that six-month period, "once [a noncitizen] provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut that showing." *Id.*[1] "[O]nce [a noncitizen's] removal is no longer reasonably foreseeable, continued detention is no longer authorized by statute." *Id.* at 699.

"Although the Supreme Court established a six-month period of presumptively reasonable detention," courts have found that *Zadvydas* does "not preclude a detainee from challenging the reasonableness of his detention before such time." *See, e.g.*, *Munoz-Saucedo v. Pittman*, 789 F. Supp. 3d 387, 395–96 (D.N.J. 2025) (citing, *inter alia*, *Zadvydas*, 533 U.S. at 699–701; *Ali v. Dep't of Homeland Sec.*, 451 F. Supp. 3d 703, 706–07 (S.D. Tex. 2020); *Hoang Trinh v. Homan*, 333 F. Supp. 3d 984, 994 (C.D. Cal. 2018)); *Ali v. Dep't of Homeland Sec.*, 451 F. Supp. 3d 703, 707 (S.D. Tex. 2020) ("This six-month presumption is not a bright line, however, and *Zadvydas* did

[1] The Court notes that the Supreme Court recently held that § 1231(a)(6) does not require the "Government to offer detained noncitizens bond hearings after six months of detention in which the Government bears the burden of proving by clear and convincing evidence that a noncitizen poses a flight risk or a danger to the community." *See Johnson v. Arteaga-Martinez*, 596 U.S. 573, 576 (2022). The Court, however, did not reach Arteaga-Martinez's constitutional or *Zadvydas* claims, concluding that such claims were not properly before the Court. *See id.* at 583–84.

not automatically authorize all detention until it reaches constitutional limits." (citations omitted)). That is, during the six-month period of detention, "[t]he presumption of reasonableness is the default," and "the government bears no burden to justify detention," "but if a person 'can prove' that his removal is not reasonably foreseeable, then he can overcome that presumption." *Id.* at 397 (citations omitted).

In Petitioner's reply, he argues that he has been detained for a total of eight months, since December 2025. (*See* Reply, ECF No. 7, PageID.74.) The Court notes that at the time that Petitioner initiated this action on August 12, 2026, he had been detained for less than six months after his order of removal became administratively final on March 17, 2026. *See Zadvydas*, 533 U.S. at 701. Based on the date that Petitioner initiated this action, he arguably still has to overcome the presumption of reasonableness to establish that his removal is not reasonably foreseeable. On the other hand, Petitioner has *now* been detained for over six months since his order of removal became final, so one could argue that the burden-shifting framework from *Zadvydas* is applicable. Regardless of who has the burden, however, the Court finds that Petitioner's removal is reasonably foreseeable. The government plans to remove Petitioner to Uganda, and the sole obstacle to that removal is an outbreak temporarily preventing removal flights. Moreover, it appears that the Ebola outbreak in Uganda has now ended. *Uganda ends Ebola outbreak*, World Health Org. African Region (Aug. 27, 2026), https://www.afro.who.int/countries/uganda/news/uganda-ends-ebola-outbreak-following-completion-42-day-countdown [https://perma.cc/GNJ7-MHAQ]. Thus, removal flights to Uganda will presumably resume soon, if they have not done so already.

Accordingly, the Court will deny Petitioner's petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241 without prejudice.

**Conclusion**

For the reasons discussed above, the Court will enter a judgment denying Petitioner's petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241 without prejudice.

Dated: October 8, 2026

/s/ Hala Y. Jarbou
HALA Y. JARBOU
CHIEF UNITED STATES DISTRICT JUDGE